*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

SARAH ELIZABETH SYKES,

        Defendant-Appellant.

FOR PUBLICATION
June 17, 2026
12:08 PM

No. 367133
Washtenaw Circuit Court
LC No. 2006-001231-FC

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

SWARTZLE, J.

This case returns to the Court on remand from our Supreme Court with directions to consider as on leave granted "whether the defendant's life sentence for second-degree murder violates Const 1963, art 1, § 16" in light of the Supreme Court's decision in *People v Taylor*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654). *People v Sykes*, 21 NW3d 859 (Mich, 2025). As explained, under current case law, defendant's sentence is not cruel or unusual, and there is nothing in this record on which we could conclude otherwise.

## I. BACKGROUND

Defendant, when she was 20 years old, was involved in a shooting which resulted in two deaths. She pleaded guilty to two counts of open murder and two counts of possession of a firearm during a felony. After conducting a degree hearing, the trial court found defendant guilty of two counts of second-degree murder and sentenced her to serve two concurrent parolable life sentences. The trial court denied defendant's first motion for relief from judgment, this Court denied defendant's application for delayed appeal, *People v Sykes*, unpublished order of the Court of Appeals, entered December 19, 2011 (Docket No. 302114), and our Supreme Court denied defendant's application for leave to appeal, *People v Sykes*, 492 Mich 854 (2012).

A decade later, defendant again moved for relief from judgment, arguing that she received ineffective assistance of appellate counsel. As a result, the trial court restarted defendant's time to appeal her convictions and sentences. Two years later, defendant moved "for Resentencing and to Amend the PSIR or in the alternative to Withdraw Plea or for a *Ginther* Hearing," claiming in

part that her sentence was cruel or unusual because "offenders with far more violent backgrounds and far more serious crimes are sentenced to lesser terms" than life with parole, and prisoners serving parolable life sentences were rarely paroled.

Over a month after her initial motion, defendant filed a supplement to her motion, arguing that *People v Parks*, 510 Mich 225; 987 NW2d 161 (2022), and *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022), supported resentencing. Defendant claimed, "she should be given the same benefit as afforded to juveniles neurologically identical to her at the time of this offense," but she did not cite evidence to support her claim. The prosecutor responded that defendant did "not fit into the paradigm created by either *Parks* or *Stovall*." Further, although defendant claimed that the "science," as understood by our Supreme Court, supported a trend toward states prohibiting life-parolable sentences for any offenders, the prosecutor argued that "as of the filing of this supplement, neither the Michigan Supreme Court nor the [L]egislature" has disallowed a sentence of life with the possibility of parole for non-juvenile offenders and therefore, defendant was not entitled to relief under *Parks* or *Stovall*.

The trial court denied defendant's motion, in relevant part because *Parks* and *Stovall* did not entitle her to relief:

> Defendant in this matter was not subject to a mandatory sentence of life imprisonment without the possibility of parole (*Parks*) and was 20 years old at the time of the sentencing offenses (*Stovall*). While Defendant's constitutional argument may represent a logical extension of those two decisions and the Supreme Court's focus on individualized sentencing, this Court concludes that the law presently in effect does not entitle Defendant to the relief sought in the Motion.

Defendant applied for leave to appeal the trial court's order, and this Court denied defendant's application. *People v Sykes*, unpublished order of the Court of Appeals, entered April 2, 2024 (Docket No. 367133). When defendant applied for leave to appeal to our Supreme Court, her application was held in abeyance pending the resolution of other cases before the Supreme Court. Those cases have now been decided, *People v Taylor*, ___ Mich ___; ___ NW3d ___ (2025) (Docket Nos. 166428 and 166654), and our Supreme Court remanded this matter to this Court as described earlier.

## II. ANALYSIS

The issue before the Court on remand is whether the defendant's life sentence with the possibility of parole is cruel or unusual punishment under Const 1963, art 1, § 16. We review for an abuse of discretion the trial court's decision on a motion for relief from judgment. *People v Robinson*, ___ Mich ___; ___ NW3d ___ (2026) (Docket No. 167595); slip op at 3. An abuse of discretion occurs if the trial court makes an error of law or its decision "falls outside the range of reasonable and principled outcomes." *People v Christian*, 510 Mich 52, 75; 987 NW2d 29 (2022). We review de novo whether a defendant's sentence constitutes cruel or unusual punishment under the Michigan Constitution of 1963. *Stovall*, 510 Mich at 312.

### B. CURRENT CASE LAW

The trial court did not abuse its discretion in denying defendant's motion. The trial court correctly found that defendant was not entitled to relief based on the law, and recent decisions by our Supreme Court or another panel of this Court do not dictate otherwise. There is no binding precedent that requires relief under article 1, § 16 of our Constitution of 1963 for a defendant convicted of second-degree murder who committed the murder when she was 20 years old and received an individualized (not mandatory) sentence of parolable life as a consequence. For example, *Parks* involved first-degree murder, mandatory life without the possibility of parole, and applied only to 18-year-olds, 510 Mich at 268; defendant's case contains none of these attributes. *Stovall* could be viewed as closer, given that it applies to a parolable life sentence for second-degree murder, but that case applied solely to actual juveniles, i.e., those under the age of majority. 510 Mich at 307-309. Adding *Taylor* into the mix does not alter the calculus on intermediate appellate review. Even though *Taylor* applied to offenders ages 19 and 20, *Taylor* involved the offense of first-degree murder and mandatory life without parole. ___ Mich ___; slip op at 2. Thus, there is nothing in current case law that compels relief for defendant.

## C.  EXTENSION OF CURRENT CASE LAW

To be clear, defendant does not point to any mental or physical condition of which she, herself, suffers as justification for a lighter sentence. (She makes fleeting reference to depression in her brief.) Instead, defendant asks us to extend our Supreme Court's precedent to give blanket relief under article 1, § 16, to any 20-year-old who, like defendant, commits murder and receives a nonmandatory sentence of parolable life as a consequence. This we cannot do.

From a factual standpoint, defendant grounds her entire appellate claim on the bare fact that she was 20 years old when she participated in second-degree murder. Thus, although we know her age at the time of the murder, we do not have any other potentially relevant facts or evidence, including:

- any factual findings by a trial court relevant to whether it was cruel or unusual to sentence this defendant—or any 20-year-old—to parolable life for second-degree murder;

- any expert report prepared as part of this criminal matter with respect to whether it was cruel or unusual to sentence this defendant—or any 20-year-old—to parolable life for second-degree murder;

- any expert testimony on direct examination with respect to whether it was cruel or unusual to sentence this defendant—or any 20-year-old—to parolable life for second-degree murder;

- any expert testimony on cross-examination with respect to whether it was cruel or unusual to sentence this defendant—or any 20-year-old—to parolable life for second-degree murder;

- any testimony by a lay witness (direct or cross-examination) that might be relevant and material to the question whether it was cruel or unusual to sentence

this defendant—or any 20-year-old—to parolable life for second-degree murder; or

- any request by either party to take judicial notice of any adjudicative fact under MRE 201.

In short, defendant asks us to write literally on all but a blank slate—the only fact on that slate being that she was 20 years old when she committed murder.

To be fair, our Supreme Court did not have any of these types of facts or evidence before it when it decided *Parks* and its progeny. Instead, our Supreme Court decided *Parks* based solely on "scientific and social-science research," specifically on reports about "brain science," provided to that Court by the parties and interested amicus organizations. *Parks*, 510 Mich at 248. Rather than the well-worn, traditional review on appeal of a trial court's findings of fact, the *Parks* Court appears to have drawn de novo its own factual conclusions from the majority's review of certain studies. See *id.* at 245-254.

Given our Supreme Court's approach in *Parks* and subsequent cases, one might presume that this Court could follow a similar approach. But this Court is not in a position to do so for several reasons. First, this Court is an error-correcting one, *Apex Laboratories Int'l Inc v City of Detroit*, 331 Mich App 1, 10-11; 951 NW2d 45 (2020), and if new, untrammeled paths are to be journeyed, it is not this Court's role to lead the way, *Parks*, 510 Mich at 245 (the *Parks* majority making clear that it "alone [is] the ultimate authority with regard to the meaning and application of Michigan law"). Second, there is literally no evidence or other information in the record before this Court upon which to conclude it is either cruel or unusual for a 20-year-old like defendant to receive a nonmandatory sentence of parolable life, even of the type of information that our Supreme Court found adequate in *Parks*—e.g., no one has provided this panel with any scientific studies. Third, although in the ordinary course this Court could remand a matter to a trial court for an evidentiary hearing to develop a factual record, our Supreme Court appears to prefer an approach that eschews such traditional judicial methods of fact-finding in cases like this.[1]

---

[1] This feature alone—i.e., the rejection of judicial norms with regard to the usual fact-finding by a trial court and review on appeal of those facts for clear error—would seem to counsel against making sweeping policy changes via judicial fiat. It is not that it is unprecedented for an appellate court to make factual findings de novo, just that it is unwise and a departure from norms of vertical judicial structure and separation of powers. This point has been made more ably by others, so it need not be elaborated here. See, e.g., *People v Eads*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 357332) (MURRAY, J., dissenting); slip op at 1-2 n 1 (collecting discussions by various judges and justices), lv gtd 25 NW3d 118 (2025). As then-Justice CLEMENT explained in her *Parks* dissent, "[I]t is not for us to decide policy issues; those questions should be left to the Legislature." *Parks*, 510 Mich at 293 (CLEMENT, J., dissenting) (footnote omitted). It is outside a court's "wheelhouse," when sitting in an appellate capacity, to evaluate "scientific evidence" in the first instance. *Id.* at 299 (CLEMENT, J., dissenting). That task should be left to those institutions

Finally, with the paucity of the factual record before us, we cannot even engage in a meaningful analysis under *People v Bullock*, 440 Mich 15, 30, 33-34; 485 NW2d 866 (1992), even assuming arguendo that that analysis is meaningful in the context of an individualized (as opposed to mandatory) sentence, see *Eads* (MURRAY, J., dissenting), slip op at 2-4. Specifically, in terms of the approach taken in *Parks*—a categorical approach, one applicable to each and every person of a certain age and not specific to the unique attributes of the particular defendant, see 510 Mich at 266—the only purportedly relevant fact we know on this record is that defendant was 20 years of age when she participated in murder. How that single datum should inform questions about the severity of the sentence or the gravity of the offense; sentences imposed in Michigan for other offenses; sentences imposed in other jurisdictions for the same crime; or the goal of rehabilitation, escapes us.

### III. CONCLUSION

Accordingly, we conclude that there is nothing in the record before us upon which a court could conclude that our Legislature, by enacting MCL 750.317, or the trial judge, by sentencing defendant to parolable life rather than a term of years, acted in an unconstitutionally cruel or unusual manner under Michigan's Constitution of 1963, art 1, § 16. The trial court did not reversibly err by denying defendant's motion.

Affirmed.

/s/ Brock A. Swartzle
/s/ Mark T. Boonstra

---

with specialized knowledge, expertise, and capabilities in fact-finding, such as our trial courts and Legislature.